UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| Rick Savage individually and on behalf of Two Brothers, LLC d/b/a Sunday River Brewing Company, ) ) ) ) | |
| Mike Mercer, of Cumberland County, State of Maine, ) ) ) | |
| James Fahey, of Cumberland County, State of Maine, ) ) ) | |
| Lindsey Crosby, of Cumberland County, State of Maine, ) ) ) | CIVIL ACTION NO. 1:20-cv-00165 |
| Individually and on Behalf of All Other Identified Class Members, ) ) ) | |
| Plaintiffs ) | |
| v. ) ) | |
| Janet T. Mills, Governor State of Maine ) ) ) | |
| Defendant ) | |

**CLASS AND COLLECTIVE ACTION SECOND AMENDED COMPLAINT**
**(JURY TRIAL DEMANDED)**

NOW COME the Plaintiffs, Rick Savage individually and on behalf of Two

Brothers, LLC d/b/a Sunday River Brewing Company, Mike Mercer, James Fahey, and

Lindsey Crosby (collectively, "the Named Plaintiffs"), by and through their counsel,

and allege the following on behalf of themselves and those similarly situated.

## INTRODUCTION

1.      In 1934, the Supreme Court warned:

Emergency does not create power.  Emergency does not increase granted power or remove or diminish the restrictions imposed upon power granted or reserved.  The Constitution was adopted in a period of grave emergency.  Its grants of power to the federal government and its limitations of the power of the States were determined in the light of emergency, and they are not altered by emergency.

*Home Building & Loan Assn. v. Blaisdell*, 290 US 398, 425 (1934).

2.      Governor Mills has issued executive orders that have closed down Maine civil society, effectively placed 1.2 million people under house arrest, and taken jobs away from hundreds of thousands of people, all without due process of law.  She has also directly and palpably interfered with interstate commerce by ordering that all people entering Maine from another State must be quarantined for 14 days, regardless of whether they have any illness.

3.      The Governor's initial Executive Order was premised on the perceived need to "flatten the curve" to avoid overwhelming the State's hospitals and healthcare centers, not to eradicate the virus.  Although the curve has been flattened, https://www.pressherald.com/2020/04/18/hospitalizations-in-much-of-maine-have-flattened-or-decreased-over-past-week/, the Governor has nonetheless continued in place executive orders that unreasonably and unnecessarily interfere with Plaintiffs' constitutional rights.

4.      Governor Mills' executive orders are unprecedented.  For the first time in Maine's history, the State is mass  quarantining people who have no indication that they are or may become sick.  Such actions unlawfully interfere with rights guaranteed by the Maine constitution, which guarantees citizens' "inherent and unalienable rights,

among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and of pursuing and obtaining safety and happiness." Me. Const. art. I, § 1

5.      The Named Plaintiffs are affected by the Governor's orders. Under threat of criminal penalties, they have been forced to close or significantly restrict their businesses, depriving them of their liberty and property interests without due process.

6.      Through her overbroad and unnecessary Executive Orders, the Governor has unilaterally suspended the civil liberties of Maine citizens and residents, as well as those travelling to Maine from other States.

7.      Federal and State constitutions confine governmental action and thereby preserve individual liberty.  Constitutional protections are not suspended in the face of a pandemic or other public emergency.

8.      The Named Plaintiffs seek a judicial declaration that the executive orders keeping people in their homes and away from their businesses, the fourteen-day quarantine requirement, and all related orders, rules, and enforcement activity, are unconstitutional under the Dormant Commerce Clause, the Privileges and Immunities Clauses of Article IV and the Fourteenth Amendment, the Due Process and Equal Protection Clauses of the Fourteenth Amendment, the Maine Constitution and Maine statutes.

## PARTIES

9.      Plaintiff Rick Savage is an owner of Sunday River Brewing Company whose business has been severely impacted by the Defendant's arbitrary and capricious restrictions.

10.     Two Brothers, LLC d/b/a Sunday River Brewing Company is a business that has been severely impacted by the Defendant's arbitrary and capricious restrictions.

11.     Plaintiff James Fahey is a wedding disc jockey whose business has been destroyed by the Defendant's arbitrary and capricious restrictions.

12.     Plaintiff Mike Mercer is a security consultant whose business has been severely affected by the Defendant's arbitrary and capricious restrictions.

13.     Plaintiff Lindsey Crosby is the owner of Harper Method Hair, LLC in South Portland.  Plaintiff owns a hair salon which hosts six hairdressers and is being forced to operate at half capacity under the Defendant's arbitrary and capricious restrictions.

14.     Defendant Janet T. Mills is the Governor of the State of Maine.  Plaintiffs sue her in her official capacity only.

## JURISDICTION

15.     This action challenges Governor Mills' Executive Orders 14 FY 19/20 19 FY 19/20; 28 FY 19/20, 34 FY 19/20, and 49 FY 19/20 (and future iterations of these orders) (all collectively, the "**Executive Orders**"), which the Named Plaintiffs believe violate multiple provisions of the Constitution of the United States.  The Court therefore has federal-question jurisdiction under 28 U.S.C. § 1331.

16.     The Named Plaintiffs seek declaratory relief, a permanent injunction, and monetary damages relating to the Executive Orders.

17.     The Named Plaintiffs also challenge the Executive Orders as a violation of the separation-of-powers established in Article III of the Maine  Constitution and a violation of Title 37-B of Maine's Revised Statutes.  The Named Plaintiffs further challenge the constitutionality of Title 37-B, Chapter 13 of Maine's Revised Statutes.

18.      Accordingly, the Named Plaintiffs also invoke the Court's supplemental jurisdiction under 28 U.S.C. § 1367.

## VENUE

19.     Governor Mills is a resident of, and the principal office of the Governor  is located in, Augusta, Maine.

20.     A substantial part of the events giving rise to the claims in this Complaint occurred in Augusta Maine.

21.     The city of Augusta is the seat of government for the State of Maine.  It is located within Kennebec County, which is within  the territorial jurisdiction of this Court. This Court is therefore a proper venue for this action under 28 U.S.C. § 1391(b)(1)-(2).

## EXECUTIVE ACTIONS

22.     On March 15, 2020, Governor Mills proclaimed a State of Emergency to authorize the use of emergency powers in response to Covid-19

23.     On March 18, 2020, Governor Mills issued Executive Order 14 FY 19/20, which banned gatherings of more than 10 people and required restaurants and bars to close except for carry out and delivery service.

24.     On March 24, 2020, Governor Mills issued Executive Order 19 FY 19/20, which divided Maine businesses into "essential" and "non-essential" businesses. It further ordered non-essential businesses to "cease activities at sites that are public facing and thereby allow customer, vendor or other in-person contact; or are at sites that require more than 10 workers to convene in space where social distancing is not possible." The Order further stated that "non-urgent medical and dental procedures, elective surgeries, and appointments should be postponed based on consultations between individuals and providers."

25.     On March 31, 2020, Governor Mills issued Executive Order 28 FY 19/20. That order required all persons in Maine to stay at home except when performing "essential activities."     It further required people to stay 6 feet apart when outside the home, restricted the use of public transportation except as "absolutely necessary," restricted private vehicles to members of the same household, set social distancing rules for essential businesses, and continued school closures that had already been implemented. The Order states that "violations are a class E crime subject to up to six months in jail and a $ 1000 fine."

26.     On April 3, 2020, the Governor issued Executive Order 34 FY 19/20. That order requires that "any person, resident or non-resident, traveling into Maine must immediately self-quarantine for 14 days." The Order also closed hotels and other lodging facilities except for:

　　　　　　a. Housing vulnerable populations, including children in emergency placements, persons at risk of domestic violence, and homeless individuals as permitted by the State.

　　　　　　b. Providing accommodations for health care workers, or other workers deemed necessary to support public health, public safety or critical infrastructure.

    c. Use of lodging properties as self-quarantine or self-isolation facilities as arranged by the State.

    d. Limited verifiable extenuating circumstances for the care and safety of residents as otherwise approved by the State.

The Order further provides that "A violation of this Order may be charged as a Class E crime subject to a penalty of up to six months in jail and a $1,000 fine.

27.    On April 29, 2020, the Governor issued Executive Order 49 FY 19/20. This order extended the effective dates of all of the above executive orders through May 31, 2020. The Order also purported to incorporate a "Restarting Plan" that would ease restrictions on businesses at the discretion of the Department of Economic and Community Development. The "Restarting Plan" is a 14-page booklet that sets forth stages when businesses may reopen, provided they comply with detailed checklists.

28.    Under Stage One of the Restarting Plan, which governs through May 31, the following businesses may reopen provided they comply with detailed checklists:

- Drive-in theaters

- Health care

- Golf Courses and Disc Golf Courses, with restrictions

- Guided outdoor activities (Hunting, Fishing)

- Guided boating (10 or fewer customers)

- Marinas

- Barber Shops and Hair Salons

- Dog Grooming

- Limited drive-in, stay-in-your-vehicle church services

- Auto Dealership Sales

- Car Washes

The 14-day quarantine requirement and ban on gatherings of more than 10 people will remain in effect.

29.     Under Stage Two, which covers the month of June, the following may reopen if they follow detailed checklists:

- Auto Dealership Sales

- Restaurants

- Lodging

- Campgrounds/RV parks

- Day camps

- Fitness and Exercise Gyms

- Nail Technicians

- All retail businesses

The 14-day quarantine requirement will remain in effect, and there is a ban on gatherings of more than 50 people.

30.     Under Stage Three, which will cover July and August, the following may reopen:

- Bars

- Lodging

- Charter boats, excursions – fewer than 50 people

- State Park Campgrounds

- Summer Camps

- Spas

- Tattoo and Piercing Parlors

- Massage Facilities

- Cosmetologists and Estheticians

- Electrolysis Services

- Laser Hair Removal Services, and Similar Personal Care and Treatment Facilities and Services

The ban on gatherings of more than 50 people and the 14-day quarantine requirement remain in effect.

31.     Stage 4 purports to permit all businesses to open "with appropriate safety modifications."  The plan does not specify when Stage 4 will be implemented or whether the quarantine requirement and restrictions on gatherings will remain in effect.

32.     On May 8, 2020, the Governor announced a "Rural Reopening Plan" that allows retail stores and restaurants in twelve counties to reopen subject to "enhanced safety precautions."  The Plan further allows remote campsites as well as sporting camps to reopen with "public health safeguards."

## GENERAL ALLEGATIONS

33.     Although the coronavirus is highly contagious, it does not invariably result in COVID-19.  For those who do develop COVID-19, the mortality rate is low.  As of May 4, 2020, the State reported on its official coronavirus webpage 1226 suspected or confirmed cases  of COVID-19, which is roughly 0.09% of the State population.  Even for the known  fractional percent of those who have developed COVID-19, the State reports a

95% survival rate.  As a result, only 0.005% of the State's population has succumbed to the virus.

34.    In all likelihood, the survival rate in Maine is far higher.  Recent antibody testing conducted in New York State and a study in Los Angeles suggest that millions more have been infected with the coronavirus than previously known, and that the supermajority of those previously infected were either asymptomatic or experienced mild reactions to it.  In New York, this new information has dropped the mortality rate to 0.5%—*i.e.*, a survival rate of 99.5%.  In Los Angeles, it dropped the mortality rate to 0.1–0.3%—*i.e.*, a survival rate of  99.7–99.9%.  There is no reason to believe that Maine is exempt from this good news.  As more Maine residents are tested, increases in positive tests will yield a higher survival rate.

35.    The number of deaths caused by COVID-19, while unquestionably tragic, is  not "unprecedented," as routinely claimed.  What is unprecedented is Governor Mills' response to it.

36.    In the late 1960s, the Hong Kong Flu swept across the globe killing more than 1 million people.  The CDC estimated that 100,000 people died in the U.S.  Maine, like other States, was affected.  Governor Kenneth Curtis did not place residents under house arrest or shutdown the economy.

37.    Governor Mills repeatedly states that decisions must be made on data.  Yet, despite the positive State-specific data, the Governor has ***tightened restrictions*** through further executive orders.

38.    An economic depression is predictable following the shutdown of civil society caused by the Executive Orders.  Businesses around Maine are permanently closing  because they cannot pay employees and vendors.  More will be forced to permanently close  the longer that the Executive Orders and any similarly drafted successor orders are in  place.

39.     Plaintiffs want to reopen their businesses, but Governor Mills forbids them from doing so under pain of criminal punishment and civil fines.  Plaintiffs should not be forced to choose between risking criminal prosecution and economic sanctions on the one hand, or exercising their constitutional rights on the other.

## CLASS ACTION ALLEGATIONS

40.     The Named Plaintiffs commence this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of the following Class: The named Plaintiffs and over 20 identified Maine businessowners, businesses, customers, and employees adversely impacted by the Governor's executive orders, the partial shutdown of the State, and the mass quarantine of its citizens.

41.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment.  Excluded from the Class are any judicial officers presiding over this matter, the law firm of Lipman & Katz and the members of their immediate families and judicial staff as well as Class counsel.

42.     Numerosity:  The proposed Class is so numerous that joinder of all members is impracticable and the disposition of their claims as a Class will benefit the parties and the Court.  Counsel for the Named Plaintiffs indicates that it has received over one-hundred calls from individuals impacted by the Executive Orders and who are seeking to join the proposed class.

43.     Commonality and Predominance:  There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members, including but not limited to:

- Whether the Executive Orders violate the State and Federal Constitution, respectively;

- Whether the COVID-19 outbreak constitutes a pandemic;

- Whether the State statute referenced and relied upon in the Executive Orders,  Title 37-B, Ch. 13, is itself unconstitutional;

- Additional common questions of law and fact as developed during the discovery phase of this litigation.

44.     Typicality: The Named Plaintiffs' claims are typical of the claims of the Class, as such claims could be alleged by any member of the Class, and the relief the Named Plaintiffs seek is typical of the relief that Class members seek.  All class members are subject to the Executive Orders, and all have been adversely impacted by said orders.

45.     Adequacy:  The Named Plaintiffs can fairly and adequately protect the interests of the Class and have no interests adverse to the Class.  At all relevant times, the Named Plaintiffs and Class members are and have been similarly situated.  The Class representatives and their chosen attorneys are familiar with the subject matter of the lawsuit, have full knowledge of the allegations contained in this amended complaint, and can prosecute this matter.  In addition, the representative's attorneys are competent in the relevant areas of the law and have sufficient experience to vigorously represent the Class. Furthermore, the resources available to Class counsel ensure that the litigation will not be hampered by a lack of financial capacity.  The Named Plaintiffs' attorneys have sufficient financial resources and are willing to absorb the costs of the litigation.

46.     Superiority:  Prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the

individual members of the Class.  As mentioned above, the constitutionality of the Executive Orders, and State statute relied upon in the Executive Orders, are the focus of all Class members.  Accordingly, the Class members do not have any interest in individually controlling the prosecution or defense of separate actions.

47.     Ascertainability:   The Class members are readily ascertainable as individuals, businesses, employees and customers that have been impacted by the Executive Orders.

## COUNT I – DORMANT COMMERCE CLAUSE

48.     The Named Plaintiffs and the Class members incorporate by reference the allegations in paragraphs 1-47 above as if fully set forth in this paragraph.

49.     The Commerce Clause of the U.S. Constitution grants Congress the power "[t]o regulate commerce with foreign Nations, among the several States, and with the Indian Tribes."  U.S. Const. art. I, § 8, cl. 3.

50.     In addition to providing an affirmative grant of power to Congress, the Commerce Clause has long been understood to restrict States in regulating interstate commerce.  This aspect of the Commerce Clause is sometimes referred to as the "Dormant Commerce Clause."   The Dormant Commerce Clause precludes States from enacting legislation that discriminates against or impermissibly burdens interstate commerce.  State laws that facially discriminate against  interstate commerce are invalid *per se* under the Commerce Clause.  This is true also of  State laws that are facially neutral, if they impermissibly burden interstate commerce in  practice.  *West Lynn Creamery* v. *Healy*, 512 U.S. 186, 194–195 (1994).

51.     Although the Dormant Commerce Clause is usually invoked to challenge protectionist laws that favor in-state businesses over out-of-state businesses, the Clause has a broader function:  to guarantee for all citizens the right to access and participate in interstate commerce.   Just as no State can prevent out-of-staters from engaging in commerce with its residents, no State may prevent its residents from participating in commerce with those located in another State.

52.     The Executive Orders impermissibly restrict Plaintiffs and their customers from exercising the  right to engage in interstate commerce.  The quarantine requirement, in particular, both discriminates against interstate commerce and unreasonably burdens interstate commerce.

53.     Governor Mills acted under color of State law in an  official capacity and within the scope of her official duties when issuing the Executive  Orders.

54.     Under 42 U.S.C. § 1983, every person who, under color of State law subjects another person to the deprivation of any rights, privileges,  or immunities secured by the Constitution and laws of the United States, shall be liable to the party injured in  an action at law, suit in equity, or other proper proceeding for redress.  Governor Mills has, under color of State law, subjected the Named Plaintiffs to a deprivation of their rights, privileges and immunities secured by the Constitution of the United States and is therefore liable to them in this action.

55.     The Named Plaintiffs and Class members seek a declaration that the Executive Orders violate the Dormant  Commerce Clause, and a permanent injunction against further infringements of their rights under  this Clause as described in the Prayer for Relief.

## COUNT  II – PRIVILEGES AND IMMUNITIES CLAUSE
## OF ARTICLE IV, § 2

56.     The Named Plaintiffs and Class members incorporate by reference paragraphs 1 through 55 above as if fully set forth in this paragraph.

57.     The Privileges and Immunities Clause of Article IV of the U.S. Constitution  provides that "[t]he citizens of each State shall be entitled to all privileges and immunities  of citizens in the several States."  U.S. Const. art. IV, § 2, cl. 1.

58.     The Privileges and Immunities Clause protects a citizen's right to pursue a livelihood in a State other than the State in which he is a resident.  *Baldwin* v. *Fish &  Game Comm'n of Montana*, 436 U.S. 371 (1978).

59.     The Executive Orders impermissibly restrict the Named Plaintiffs and Class members from exercising these rights.

60.     Governor Mills acted under color of State law in an  official capacity and within the scope of her official duties when issuing the Executive  Orders.

61.     Under 42 U.S.C. § 1983, every person who, under color of State law subjects another person to the deprivation of any rights, privileges,  or immunities secured by the Constitution and laws of the United States, shall be liable to the party injured in  an action at law, suit in equity, or other proper proceeding for redress.  Governor Mills has, under color of State law, subjected the Named Plaintiffs and Class members to a deprivation of their rights, privileges and immunities secured by the Constitution of the United States and is therefore liable to them in this action.

62.     Named Plaintiffs and Class members seek a declaration that the Executive Orders violate the Privileges  and Immunities Clause, and an injunction against further infringements of their rights  under this Clause as described in the Prayer for Relief.


## COUNT  III – PRIVILEGES OR IMMUNITIES CLAUSE
## OF THE FOURTEENTH AMENDMENT

63.     The Named Plaintiffs and Class members incorporate by reference paragraphs 1 through 62 above as if fully set forth in this paragraph.

64.     The Privileges or Immunities Clause of the Fourteenth Amendment to the U.S.  Constitution provides that "[n]o State [can] make or enforce any law [that] abridge[s] the  privileges or immunities of citizens of the United States." U.S. Const. am. XIV, § 1, cl. 2.

65.     The right to travel between States is a privilege of federal citizenship.

66.     The right to engage in interstate commerce is also a privilege of federal Citizenship.

67.     The Executive Orders impermissibly restrict the Named Plaintiffs and Class members, and their customers, from exercising these rights.  The quarantine requirement, in particular, unreasonably restricts the right to travel to Maine.

68.     Under 42 U.S.C. § 1983, every person who, under color of State law subjects another person to the deprivation of any rights, privileges,  or immunities secured by the

Constitution and laws of the United States, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

69.     Governor Mills acted under color of State law in an official capacity and within the scope of their official duties when issuing the Executive Orders.

70.     Under 42 U.S.C. § 1983, every person who, under color of State law subjects another person to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. Governor Mills has, under color of State law, subjected the Named Plaintiffs and Class members to a deprivation of their rights, privileges and immunities secured by the Constitution of the United States and is therefore liable to them in this action.

71.     The Named Plaintiffs and Class members seek a declaration that the Executive Orders violate the Privileges or Immunities Clause, and an injunction against further infringements of their rights under this Clause as described in the Prayer for Relief.

## COUNT IV PROCEDURAL DUE PROCESS

72.     The Named Plaintiffs and Class members incorporate by reference paragraphs 1 through 71 above as if fully set forth in this paragraph.

73.     The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides that no State can "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1, cl. 3.

74.     The procedural component of the Due Process Clause prohibits government from depriving the Named Plaintiffs and Class members of liberty and property interests without providing any process before or after the deprivations occurred.

75.     To establish a procedural due process claim under 42 U.S.C. § 1983, a plaintiff must show that (1) it had a life, liberty, or property interest protected by the Due Process Clause; (2) it was deprived of this protected interest; and (3) the state did not afford it adequate procedural rights.

76.     The Named Plaintiffs and Class members have a protected liberty interest in the right to live without arbitrary governmental interference and to operate their businesses.

77.     The Named Plaintiffs and Class members have protected liberty and property interests that Defendant has infringed through the Executive Orders.

78.      Governor Mills has not provided any procedural due process before issuing the Executive Orders.  Nor do the Executive Orders provide any mechanism for post-deprivation review.

79.     Under 42 U.S.C. § 1983, every person who, under color of State law subjects another person to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.  Governor Mills has, under color of State law, subjected the Named Plaintiffs and Class members to a deprivation of their rights, privileges and immunities secured by the Constitution of the United States and is therefore liable to them in this action.

80.     Governor Mills acted under color of State law in an official capacity and within the scope of their official duties when issuing the Executive Orders.

81.     As a direct and proximate cause of the failure to provide any pre- or post-deprivation process, the Named Plaintiffs and Class members suffered prejudice under threat of criminal and civil sanctions.

82.     Because Governor Mills failed to provide any pre- or post-deprivation review of the orders and rules shuttering their businesses, the Named Plaintiffs and Class members are suffering substantial losses of liberty and property:

83.     The prejudice each of the Named Plaintiffs and Class members has suffered would not have occurred but for Defendant's deprivations of their liberty and property interests.

84.     The Named Plaintiffs and Class members seek a declaration that the Executive Orders violate the procedural component of the Due Process Clause, and an injunction against further infringements of their rights under this Clause as described in the Prayer for Relief.

## COUNT V SUBSTANTIVE DUE PROCESS

85.     The Named Plaintiffs and Class members incorporate by reference paragraphs 1 through 84 above as if fully set forth in this paragraph.

86.     The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides that no State can "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1, cl. 3.

87.     The substantive component of the Due Process Clause prohibits government from taking action that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987).

88.     The Named Plaintiffs and Class members have a protected liberty interest in the right to live without arbitrary governmental interference with their liberty and property interests.

89.     The Executive Orders shock the conscience and interfere with the Named Plaintiffs and Class members deeply-rooted liberty and property rights, including the to work, right to contract, and right to engage in commerce.

90.     Each of the Named Plaintiffs and Class members could and can conduct business in full compliance with all of the rules imposed on businesses allowed to operate under the Executive Orders, or reasonably equivalent and equally safe measures tailored to the unique nature of the in-person operations. Thus, the Executive Orders are not narrowly tailored to achieve a compelling governmental interest.

91.     Nor is there any rational basis to deprive the Named Plaintiffs and Class members of their liberty and property interests in performing services for willing customers when they can do so safely and in the same (or reasonably safe equivalent) manner as other businesses allowed to operate.

92.     In the alternative, the Executive Orders are not reasonably related to a legitimate governmental interest.

93.     Governor Mills acted under color of State law in an official capacity and within the scope of their official duties when issuing the Executive Orders.

94.     Under 42 U.S.C. § 1983, every person who, under color of State law subjects another person to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. Governor Mills has, under

color of State law, subjected the Named Plaintiffs and Class members to a deprivation of their rights, privileges and immunities secured by the Constitution of the United States and is therefore liable to them in this action.

95.     The Named Plaintiffs and Class members seek a declaration that the Executive Orders violate the substantive  component of the Due Process Clause, and an injunction against further infringements of  their rights under this Clause as described in the Prayer for Relief.

## COUNT  VI EQUAL  PROTECTION

96.     The Named Plaintiffs and Class members incorporate by reference paragraphs 1 through 95 above as if fully set forth in this paragraph.

97.     The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution provides that no State can "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1, cl. 4.

98.     The Executive Orders deprive the Named Plaintiffs and Class members of the equal protection of the law  because they allow some businesses to operate but not the Named Plaintiffs and Class members businesses, even though  they are similarly situated.

99.     Each Plaintiff could and can conduct business in full compliance with all of the  rules imposed on businesses allowed to operate under the Executive Orders, or reasonably  equivalent and equally safe measures tailored to the unique nature of the in-person operations. Thus, the Executive Orders are not narrowly tailored to achieve a compelling govern-mental interest.

100.    Nor is there any rational basis to deprive the Named Plaintiffs and Class members of their liberty and property interests in performing services for willing customers when they can do so safely and in the same (or reasonably safe equivalent) manner as other businesses allowed to operate.

101.    In the alternative, the Executive Orders are not reasonably related to a legitimate governmental interest.

102.    Governor Mills acted under color of State law in an official capacity and within the scope of their official duties when issuing the Executive Orders.

103.    Under 42 U.S.C. § 1983, every person who, under color of State law subjects another person to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. Governor Mills has, under color of State law, subjected the Named Plaintiffs and Class members to a deprivation of their rights, privileges and immunities secured by the Constitution of the United States and is therefore liable to them in this action.

104.    The Named Plaintiffs and Class members seek a declaration that the Executive Orders violate the Equal Protection Clause, and an injunction against further infringements of their rights under this Clause as described in the Prayer for Relief.

**COUNT VII DECLARATORY JUDGMENT SEPARATION OF POWERS**

105.    The Named Plaintiffs and Class members incorporate by reference paragraphs 1 through 105 above as if fully set forth in this paragraph.

106.    There is an actual and present controversy between the parties.

107.     The Named Plaintiffs and Class members contend that the Executive Orders violate the Separation of Powers Clauses in Article III, Sections 1 and 2 of the Maine Constitution and that the Executive Orders prohibit them from engaging activities in which they would otherwise be free to engage under threat of criminal sanction.

108.     The Separation of Powers Clauses in Article III of the Maine Constitution provide:

> Section 1. The powers of this government shall be divided into 3 distinct departments, the legislative, executive and judicial.

> Section 2. No person or persons, belonging to one of these departments, shall exercise any of the powers properly belonging to either of the others, except in the cases herein expressly directed or permitted.

109.     Maine Revised Statute 37-B, § 742 violates the Separation of Powers Clause because it vests governors with total legislative power whenever a governor asserts the existence of an emergency.

110.     On information and belief, Governor Mills denies these contentions.

111.     The Named Plaintiffs and Class members seek a judicial declaration that the Executive Orders violate the Separation of Powers Clause, and a permanent injunction against enforcement or adoption of these and similar orders and rules in the future as described in the Prayer for Relief.

## COUNT VIII DECLARATORY JUDGMENT VIOLATION OF MAINE REVISED STATUTE 37-B

112.     The Named Plaintiffs and Class members incorporate by reference paragraphs 1 through 111 above as if fully set forth in this paragraph.

113.     There is an actual and present controversy between the parties.

114.     Maine Revised Statute 37-B, § 742 provides when the Governor should declare a state of emergency and the Governor's powers after declaring an emergency.

115.     According to Maine Revised Statute 37-B, § 742, the Governor shall declare a state of emergency in the State or any section of the State whenever a disaster or civil emergency exists or appears imminent.

116.     According to Maine Revised Statute 37-B, § 703, a disaster "means the occurrence or imminent threat of widespread or severe damage, injury or loss of life or property resulting from any natural or man-made cause, including, but not limited to, fire, flood, earthquake, wind, storm, wave action, oil spill or other water contamination requiring emergency action to avert danger or damage, epidemic, extreme public health emergency pursuant to Title 22, section 802, subsection 2-A, air contamination, blight, drought, critical material shortage, infestation, explosion, riot or hostile military or paramilitary action."

117.     Epidemics are listed as a potential natural or man-made cause that could lead to a disaster, but the presence of an infectious disease does not alone qualify for this classification.  Therefore, the presence of COVID-19 within the state of Maine itself would not constitute the occurrence or imminent threat of a pandemic causing widespread or severe damages, injury or loss of life or property.

118.     As of May 14, 2020, the total confirmed cases for the State are 1,405 cases, or approximately .01%  of the Maine population.  Of that number, there are 69 reported deaths in Maine, or approximately .005% of the population.

119.     Of the sixteen Counties in Maine, and as of May 14, 2020, four Counties have 10 or fewer confirmed cases, Piscataquis (1), Washington (2), Aroostook (7), and Hancock (10).  Seven have 50 or fewer cases, Lincoln (15), Oxford (17), Somerset (18), Knox (19), Sagadahoc (25), Franklin (31), and Waldo (50).  Only five counties have 75 or more cases, Penobscot (91), Androscoggin (109), Kennebec (113), York (277), and Cumberland (778).

120.     On January 8, 2020, the Bangor Daily News reported that 1,300 people across the State had tested positive for the flu, or nearly 100 less individuals than the total confirm cases of COVID-19.  As of April 7, 2020, there were a reported 10,171 cases of the flu, or more than seven times the current number of confirmed cases of COVID-19 in the State and not taking into account new cases of the flu since April 7th.

121.     Given these figures, an epidemic does not exist throughout the State of Maine which would support declaring a statewide "disaster."

122.     Governor Mills' Executive Orders do not make any attempt to narrowly define the portion of Maine constituting a disaster or affected area and instead impose blanket prohibitions on the entire state, including restrictions on residents leaving their homes and the ability for businesses to operate.

123.     Governor Mills' Executive Orders also include a mandatory quarantine for anyone coming into Maine from another state regardless of the area of Maine the person intends to visit or the condition of the prior location of the visitor.

124.     These broad restrictions to control movement and business within the entire State of Maine instead of within defined "affected areas" exceed the powers afforded to the Governor under Maine Revised Statute 37-B, § 743, including the portions of the statute cited in the Executive Orders.

125.     Governor Mills' Executive Orders have resulted in hundreds of thousands of lost jobs and unemployment claims and the Orders themselves create an economic disaster for the State of Maine if they stay in place through May 31, 2020 or longer as currently ordered.

## COUNT IX DECLARATORY JUDGMENT VIOLATION OF NATURAL RIGHTS SECTION OF MAINE CONSTITUTION

126.     The Named Plaintiffs and Class members incorporate by reference paragraphs 1 through 125 above as if fully set forth in this paragraph.

127.     Article I, Section 1 of the Maine Constitution provides "[a]ll people are born equally free and independent, and have certain natural, inherent and unalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and of pursuing and obtaining safety and happiness." Me. Const. Art. I, § 1.

128.    Governor Mills issued the Executive Orders pursuant to Title 37B, Ch. 13.

129.    Governor Mills, by issuing the Executive Orders, deprived the Named Plaintiffs and Class members of their liberty, and their ability to acquire, possess, and protect their property. Moreover, the executive orders further deprive the Named Plaintiffs and Class members of the ability to obtain safety and happiness.

130.    Said deprivation of rights has been in place since the implementation of the first executive orders and continues each day the executive orders remain in effect.

131.    To the extent that Title 37B, Ch. 13 authorizes the Governor to implement the Executive Orders, Title 37B, Ch. 13 violates the natural rights section of the Maine Constitution.

## COUNT  X VIOLATION OF TAKING CLAUSE

132.    The Named Plaintiffs and Class members incorporate by reference paragraphs 1 through 134 above as if fully set forth in this paragraph.

133.    The Takings Clause of the Fifth Amendment of the Constitution of the United States, applicable to the States through the Fourteenth Amendment, provides "nor shall private property be taken for public use, without just compensation."  US. Cons. Amend. V.

134.   The Executive Orders prevent the Named Plaintiffs and Class members from operating their business and thereby prevent the Named Plaintiffs and Class members, individually, from generating revenue.

135.   By preventing the Named Plaintiffs and Class members' from operating their respective businesses, the Executive Orders have damaged and harmed the Plaintiffs' businesses and significantly impaired their use.

136.   Accordingly, the Executive Orders deny the Named Plaintiffs and Class members all economic use of their businesses and jeopardizes the continued viability of their businesses.

137.   The Named Plaintiffs and Class members have not received just compensation for the taking.

138.   Under 42 U.S.C. § 1983, every person who, under color of State law subjects another person to the deprivation of any rights, privileges,  or immunities secured by the Constitution and laws of the United States, shall be liable to the party injured in  an action at law, suit in equity, or other proper proceeding for redress.  Governor Mills has, under color of State law, subjected the Named Plaintiffs and Class members to a deprivation of their rights, privileges and immunities secured by the Constitution of the United States and is therefore liable to them in this action.

## COUNT XI FAILURE TO COMPLY WITH NOTICE AND COMMENT RULEMAKING

139. The Named Plaintiffs and Class members incorporate by reference paragraphs 1 through 138 above as if fully set forth in this paragraph.

140. On April 29, 2020, the Governor issued Executive Order 49 FY 19/20, which extended Executive Orders 14, 19, 28, and 34.

141. Executive Order 49 FY 19/20 also stated that the aforementioned Executive Orders were "subject to interpretive guidance. Such guidance includes, but is not limited to, the implementation of the *Restarting Plan . . . .*"

142. The Order continues and states that the Department of Economic and Community Development ("DECD") "shall implement the *Restarting Plan. . . .*"

143. On April 29, 2020, the DECD posted "Restarting Maine's Economy," which set forth policies and procedures for Maine Businesses to follow to reopen their businesses.

144. Also on April 29, the DECD posted "Guidance on Governor's Executive Order 19 – Curbside Pickup," which allowed non-essential retail businesses to take phone and online orders. The same date, the DECD further announced "New Guidance on Governor's Executive Order 19 Regarding Places of Worship," prohibiting in-person gatherings among other requirements.

145. On May 8, 2020, the Governor announced the "Rural Reopening Plan," which was simply inserted into the "Restarting Maine's Economy" plan.

146.  On May 27, 2020, the Governor announced new restrictions on restaurants operating in York, Cumberland, and Androscoggin counties.  These restrictions were also inserted into the "Restarting Maine's Economy" plan and available on the DECD website.

147.  5 M.R.S. § 8052 requires:

[p]rior to the adoption of any rule, the agency shall give notice as provided in section 8053 and may hold a public hearing, except that a public hearing must be held if otherwise required by statute or requested by any 5 interested persons or if the rule is a major substantive rule as defined in section 8071. . . .

148.  A "rule" is defined, in part, as:

[T]he whole or any part of every regulation, standard, code, statement of policy, or other agency guideline or statement of general applicability, including the amendment, suspension or repeal of any prior rule, that is or is intended to be judicially enforceable and implements, interprets or makes specific the law administered by the agency, or describes the procedures or practices of the agency

5 M.R.S. § 8002(9)

149.  The Legislature is also required to review certain agency rules, including major substantive rules pursuant to 5 M.R.S. § 8071.

150.  The Governor's Executive Orders, including  Executive Order 28 FY 19/20 states that said order "shall be enforced by law enforcement as necessary and violations are a class E crime subject to up to six months in jail and a $1000 fine."

151.  The DECD failed to provide notice and comment rulemaking before implementing the "Restarting Maine's Economy" plan and all amendments thereto, including the Rural Reopening Plan and the recent restrictions on restaurants operating in Androscoggin, York and Cumberland Counties.

152.   Furthermore, the DECD failed to comply with requisite notice and comment rulemaking when implementing the Guidance on Curbside Pickup and Guidance regarding places of worship.

## PRAYER FOR RELIEF

WHEREFORE, the Named Plaintiffs, individually and on behalf of the proposed Class members respectfully ask the Court to grant them the following:

1.   An order certifying the Class, appointing the Named Plaintiffs as Class Representatives, and appointing their attorneys as Class counsel;

2.   A declaratory judgment that the Executive Orders:

(a)   violate Plaintiffs' State and Federal constitutional rights as set forth in this Complaint; and

(b)   violate the Separation of Powers Clauses of the Maine Constitution.

3.   A declaratory judgment that Title 37B, Ch. 13 is unconstitutional and violates the natural rights section of the Maine Constitution;

4.   A Declaratory Judgment that the DECD failed to comply with notice and comment rule making and violated the Maine Administrative Procedure Act.

5.   An Injunction prohibiting Governor Mills from enforcing the Executive Orders and from issuing any future orders or rules similar to the invalid ones described in this action;

6.   Reasonable attorneys' fees, costs, and expenses under 42 U.S.C. § 1988 and any other applicable law;

7.   Just compensation for the taking of the Plaintiffs' property; and

8.      A preliminary and permanent injunction against enforcement of the "Restarting Maine's Economy" plan and all additional rules promulgated by the DECD; and

9.      Any other such further relief to which Plaintiffs may be entitled as a

matter of law or equity, or which the Court determines to be just and proper.

## JURY DEMAND

Under the Seventh Amendment to the U.S Constitution and Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable.

## CONCLUSION

As Justice Marshall stated "[h]istory teaches that grave threats to liberty often come in times of urgency, when constitutional rights seem too extravagant to endure. . . . [W]hen we allow fundamental freedoms to be sacrificed in the name of real or perceived exigency, we invariably come to regret it." *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 635 (1989) (*Marshall, J.*, dissenting).


DATED:  May 28, 2020             /s/Stephen C. Smith
                                 Stephen C. Smith, Esq.   Bar No. 8720
                                 John E. Baldacci, Jr., Esq., Bar No. 5773
                                 Attorney for Plaintiffs
                                 LIPMAN & KATZ
                                 PO Box 1051
                                 Augusta, ME 04332-1051
                                 207-622-3711
                                 ssmith@lipmankatz.com
                                 jbaldacci@lipmankatz.com